YATES *v.* NATIONAL HOME.

The deputy-governor of the branch at Milwaukee of "The National Home for
    Disabled Volunteer Soldiers" was not permitted by its by-laws to contract
    for or receive, beyond his stated salary, compensation for services, which, at
    the request of the building committee of the board of managers, he rendered
    in the erection of the new buildings for the home at that place.

ERROR to the Circuit Court of the United States for the
Eastern District of Wisconsin.

The facts are stated in the opinion of the court.

*Mr. Luther S. Dixon* for the plaintiff in error.

No counsel appeared for the defendant in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

By the act of Congress of March 21, 1866, c. 21, the Presi-
dent of the United States, the Secretary of War, the Chief
Justice of the United States, and such other persons as might
thereafter be associated with them, according to the provisions
of that act, were constituted a board of managers of an estab-
lishment for the care and relief of the disabled volunteers of
the United States army, by the name of "The National Asylum
for Disabled Volunteer Soldiers;" with power to take, hold,
and convey real and personal property, and. to make by-laws,
rules, and regulations, not inconsistent with the laws of the
United States, for carrying on the business and government
of the asylum.

Authority was given to the board of managers, consisting of
twelve persons, to procure suitable sites and to erect for mili-
tary asylums the necessary buildings for all persons serving in
the army of the United States at any time in the war of the
Rebellion, who were not provided for by existing laws, and who
had, or might thereafter, become disqualified from procuring
their own maintenance and support by reason of wounds re-
ceived or sickness contracted while in the line of their duty
during the rebellion. The act further provides that the officers
of the asylum shall consist of governor, deputy-governor, secre-
tary, treasurer, and such other officers as the board of managers

may deem necessary, to be appointed from disabled officers serving as before mentioned, and removable by the board from time to time as the interests of the institution may require.

At a meeting of the board of managers held on the 12th of April, 1867, E. B. Wolcott and John S. Cavender, two of their number, were appointed a committee to select a plan for asylum buildings at Milwaukee, to make and accept proposals for the same, to superintend the construction, and to put the building then owned by the asylum in condition for immediate use. At the January meeting the president of the board was added to the committee. Shortly thereafter several building contracts were entered into, and the work of construction was commenced.

On the 28th of December, 1868, Yates, a disabled officer who had served in the Union army, and who was deputy-governor of the branch asylum at Milwaukee, addressed a communication to Cavender and Wolcott, from which it appears that he had theretofore purchased the materials, employed the labor, and directed the work for the new building, not included in the special contracts with mason, tin, and iron workers. Up to that date his services in that connection had been given gratuitously, but in consequence of the action of the board, whereby his duties and responsibilities were increased and his pay as deputy-governor reduced, he gave notice, in the same communication, that he would not assume or take any further responsibility for anything pertaining to the construction of the new building, unless the asylum, in consideration of his perfecting the plans, directing the work, employing the labor, purchasing materials, and putting the institution in proper working order, would pay him five per cent on all purchases and disbursements that had been or until the completion of the building might be made by him or under his direction, outside of contracts for masons, roofers, and steam-heater's works. Upon that communication, containing these propositions, Cavender and Wolcott, as "Building Com. Nat. Asylum," in good faith, we doubt not, but without any action upon the part of the board of managers, made and signed this indorsement: "Col. Theo. Yates will complete the work as proposed, and will be paid in the manner and to the amount herein named."

Yates claims in this action the sum of $8,414.96 for services performed by him under that agreement.

The court below gave a peremptory instruction to the jury to find for the defendant, which was done. Judgment was entered thereon. Yates sued out this writ.

We have not been favored with a brief on behalf of the defendant, but are informed by counsel for the plaintiff that the court below was of opinion that Yates was prohibited by the by-laws of the institution, of which he was an officer, from contracting for or receiving compensation for the services by him rendered. In that view we concur. One of the by-laws in force when the agreement was made provides that " the board shall fix such stated and sufficient salaries to any officer or agent of the establishment, payable in money, as they shall deem proper, which shall be in full for the services of the officer or agent, and not to be diminished during his term of office. No perquisites, fees, allowances, or advantages, other than his salary or stated pay, shall be permitted to *any* officer, agent, or employé of the establishment, under any pretence whatsoever." Another by-law declared that " the president of the board shall . . . approve all contracts, make and sign all requisitions," &c. If the appointment of Wolcott and Cavender as a committee with power to make and accept proposals for the new building, and to superintend its construction, authorized them, without consulting the board, or without the concurrence of its president, to make all contracts pertaining to the erection of that building, it by no means follows that they could make a binding contract with an officer of the institution, in conflict with its by-laws and whereby he could receive, in addition to his salary or stated pay, " perquisites, fees, allowances, or advantages." The manifest object of the by-law in question was to remove from the officers of the asylum, charged with the immediate conduct of its affairs, all possible temptation to so manage the institution as to derive pecuniary advantage therefrom beyond their respective salaries or stated pay.

It is contended that the plaintiff was not bound, in his capacity as deputy-governor, to perform any services whatever in connection with the construction of the new building. Were

this conceded, — as, perhaps, it must be, — he is confronted not only with the fact that he was an officer of the asylum, with a stated salary, but with an express prohibition, in the by-laws of the institution, against his receiving under any pretence whatsoever, perquisites, fees, allowances, or advantages other than his salary or stated pay.    The evidence furnishes no reason to suppose that the board of managers were aware of, or ever recognized or approved the agreement of the building committee to compensate him for special services.    The sole question, therefore, is whether the building committee had authority to contract with an officer of the institution that he should receive compensation or pecuniary advantages, beyond his salary, for the services in question.    They clearly had not, and, without considering other questions argued by counsel, we approve, for the reasons given, the instruction to find for the defendant.

*Judgment affirmed.*